UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSORCIO CEMENTERO DEL SUR S.A., Petitioner, -v- GCC, S.A.B. de C.V., and GCC LATINOAMERICA, S.A. de C.V., Respondents. | 26-cv-646 (SHS)<br><br>AMENDED OPINION & ORDER |

SIDNEY H. STEIN, U.S. District Judge.

Petitioner Consorcio Cementero del Sur S.A. ("CONCESUR") has petitioned to vacate an arbitration award issued against it on the bases that the arbitrators manifestly disregarded New York's statute of limitations; that the arbitrators denied CONCESUR a fundamentally fair hearing by deciding the statute of limitations issue on a legal theory not addressed by the parties; and that the arbitrators manifestly disregarded the law when they exercised discretion to permit an assumedly untimely claim. Respondents GCC, S.A.B. de C.V., and GCC LATINOAMERICA, S.A. de C.V. (together, "GCC") have cross-petitioned to confirm the arbitration award. The Court determines that the arbitrators did not manifestly disregard the law in exercising discretion not to apply the statute of limitations to bar GCC's claim. This finding is sufficient to support the award, and the Court accordingly denies CONCESUR's petition to vacate and grants GCC's cross-petition to confirm the arbitration award.

## I. BACKGROUND

This is a tale of two arbitrations: one between CONCESUR and GCC—which resulted in the arbitration award now before the Court—and an earlier arbitration between GCC and non-party Compañía de Inversiones Mercantiles, S.A. ("CIMSA"), which spawned a roughly $40 million bill that GCC ultimately sought to have CONCESUR pay. But before the Court limns the history of these arbitrations, some facts (and a few more acronyms) are in order.

### A. GCC's Sale of SOBOCE Stock to CONCESUR

In 2011, GCC sold CONCESUR shares of a Bolivian cement company called Sociedad Boliviana de Cemento, S.A. ("SOBOCE"). (Dkt. No. 1-1 ("Award") ¶¶ 111, 132.) That sale was accomplished through a Share Purchase Agreement (Dkt. No. 1-3

("SPA")) and a Supplementary Share Purchase Agreement (Dkt. No. 1-2 ("SSPA")), both of which are dated August 18, 2011.

Leading up to the August 18, 2011 sale, GCC told CONCESUR that another company—CIMSA—had a right of first refusal regarding the SOBOCE shares under the terms of SOBOCE's 2005 Shareholders' Agreement and that CIMSA had purported to exercise its right of first refusal. (Award ¶¶ 113, 124.) But GCC also told CONCESUR that GCC believed CIMSA had failed to exercise the right properly because CIMSA had not matched the terms of CONCESUR's offer, as required by the SOBOCE Shareholders' Agreement. (*Id.*)

GCC and CONCESUR negotiated terms in the SPA and SSPA to deal with the risk of a potential claim by CIMSA. The SSPA included a provision that, if CIMSA sued regarding GCC's sale of the SOBOCE shares to CONCESUR, CONCESUR would have the right to assume control of the litigation and would pay any damages assessed against GCC. (*Id.* ¶ 134–39; SSPA § 3.05.) For its part, GCC represented in the SSPA that the sale of the SOBOCE shares to CONCESUR did not violate the SOBOCE 2005 Shareholders' Agreement or "any Law applicable to GCC Group or their properties or assets"; that GCC was "the lawful owner of the Sold [SOBOCE] Shares, free and clear of any Lien (including any restriction on the right to vote, sell or otherwise dispose of such Sold [SOBOCE] Shares)"; and that GCC had "not granted to any Person any option or other right to acquire any of the Sold [SOBOCE] Shares other than pursuant to the Share Purchase Agreement and this Supplementary [Share Purchase] Agreement." (SSPA § 2.01(b)(iii), (d)(i), (d)(iii).) In Schedule 2.01 to the SSPA, GCC also disclosed the basic facts surrounding CIMSA's attempt to exercise its right of first refusal and noted that, while "GCC Group does not believe that CIMSA has a valid claim under the SOBOCE Shareholders' Agreement with respect to the Right of First Refusal," "there can be no assurances that CIMSA will not ultimately bring such a claim or that . . . it would not prevail with respect to such claim." (*Id.* Schedule 2.01.)

According to CONCESUR, it believed there was little risk of CIMSA prevailing on a claim regarding GCC's sale of SOBOCE stock to CONCESUR based on GCC's representation that CIMSA's attempt to exercise its right of first refusal was facially—and fatally—defective. (Dkt. No. 1 (CONCESUR Pet.) ¶ 27.) Unbeknownst to CONCESUR, however, and in parallel to GCC's negotiations with CONCESUR, GCC had been negotiating extensively with CIMSA in July and August 2011 for a sale of the SOBOCE shares to CIMSA outside of CIMSA's formal right of first refusal. (Award ¶¶ 118–21, 123, 130.)

## B. CIMSA-GCC Arbitration

After GCC consummated the sale of the SOBOCE stock to CONCESUR, CIMSA initiated an arbitration against GCC on November 16, 2011, before the Comisión Interamericana de Arbitraje Comercial. (*Id.* ¶ 142.) CONCESUR initially participated in that CIMSA-GCC arbitration and paid GCC's legal expenses. (*Id.* ¶ 145, 147.) The CIMSA-GCC arbitration tribunal issued a merits award in September 2013 finding that GCC breached both its obligations under the SOBOCE Shareholders' Agreement and its Bolivian law duty of good faith in preliminary negotiations with CIMSA. (*Id.* ¶ 161.) The CIMSA-GCC arbitration tribunal also found that CIMSA had not properly exercised its right of first refusal. (*Id.*)

GCC formally notified CONCESUR of the merits award against GCC in the CIMSA-GCC arbitration on September 20, 2013, noting that any damages later awarded against GCC "would have to be borne by [CONCESUR] under the terms of the [SPA] and the [SSPA]." (*Id.* ¶ 163.) CONCESUR responded on October 9, 2013, asserting that the indemnification provision of the SSPA would not cover an award against GCC in the CIMSA-GCC arbitration. (*Id.* ¶ 164.) On November 26, 2013, CONCESUR formally informed GCC that it was relinquishing control over the CIMSA-GCC arbitration and would no longer cover costs. (*Id.* ¶ 166.) On November 29, 2013, however, CONCESUR wrote GCC expressing its agreement with GCC's plan to seek annulment of the award against GCC. (*Id.* ¶ 167.) On January 27, 2014, CONCESUR sent a letter to GCC reiterating that it would not participate further in the CIMSA-GCC arbitration proceedings. (*Id.* ¶ 170.)

On April 10, 2015, the CIMSA-GCC arbitration tribunal issued a damages award against GCC assessing $34,129,893.50 in damages plus arbitration costs of $2,009,329.37 and 6% annual interest on that award. (*Id.* ¶ 173.)

GCC thereafter engaged in legal proceedings in Bolivia to annul the CIMSA-GCC arbitration merits and damages awards, ultimately securing a favorable ruling from the Bolivian courts vacating the awards. (*Id.* ¶¶ 174–75.)

At the same time, CIMSA sought to enforce the awards against GCC in the United States. (*Id.* ¶ 176.) A federal district court in Colorado entered judgment against GCC on March 25, 2019, for $36,139,223 plus 6% interest from the date of the CIMSA-GCC arbitration damages award against GCC, and CIMSA was able to obtain a writ of garnishment for a small amount in a GCC U.S. bank account in 2021. (*Id.* ¶¶ 176–77.) GCC sought to vacate the Colorado federal judgment after the CIMSA-GCC awards were annulled in the Bolivian courts, but the district court denied that motion, prompting a lengthy appeals process. (*Id.* ¶ 178.) Ultimately, GCC and CIMSA reached

a settlement on March 10, 2023, in which GCC agreed to pay CIMSA $41 million immediately by wire to resolve the dispute. (*Id.* ¶ 179.)

### C. GCC-CONCESUR Arbitration

GCC commenced an arbitration against CONCESUR in the ICC International Court of Arbitration in New York on April 27, 2022, claiming that CONCESUR had breached the SSPA by failing to indemnify GCC for damages under the April 2015 CIMSA-GCC arbitration damages award. (*See* Dkt. No. 1-4 (Request for Arbitration).)

As relevant here, CONCESUR asserted in the arbitration that GCC's claim was barred by the statute of limitations. The parties agreed that GCC's claim under the indemnification provision of the SSPA was subject to New York's six-year statute of limitations for breach of contract claims pursuant to N.Y. C.P.L.R. § 213(2). (Award ¶ 284.)

GCC and CONCESUR disputed when GCC's indemnification claim accrued, which turned on whether section 3.05 of the SSPA provided an "indemnity against *liability*" or an "indemnity against *loss*" under New York law and on whether GCC's liability was fixed as of the date of the CIMSA-GCC arbitration damages award in April 2015 or the date of the Colorado federal judgment in March 2019. (*See id.* ¶¶ 284–85.)

GCC also contended that, even if its claim was outside the statute of limitations, the arbitrators could exercise discretion not to apply the statute of limitations pursuant to N.Y. C.P.L.R. § 7502(b), which provides that arbitrators "may, in their sole discretion, apply or not apply the bar" imposed by the statute of limitations. (*See* Dkt. No. 1-7 (GCC's Statement of Claim) ¶ 317; Dkt. No. 1-9 (GCC's Reply and Defense to Counterclaim) ¶ 309.) CONCESUR urged in opposition that "there is no reason in equity for the Tribunal to exercise its discretion to render [GCC's] indemnification claim timely" (Dkt. No. 1-10 (CONCESUR's Statement of Rejoinder and Reply to Counterclaim) ¶ 344), but CONCESUR did not dispute that the arbitrators possessed discretion regarding the application of the statute of limitations pursuant to N.Y. C.P.L.R. § 7302(b). (*See* Award ¶ 301 ("Both Parties have acknowledged that the Tribunal has this discretion and that such discretion may be exercised in the light of considerations of fairness, efficiency, and policy.").)

The ICC arbitration tribunal issued an award in GCC's favor on October 20, 2025, determining that CONCESUR was obligated to pay GCC (i) the $41 million GCC had paid CIMSA, (ii) GCC's legal expenses and costs of $7,611,151.18, (iii) €218,225 in arbitrator costs, (iv) fees and expenses of GCC's experts and other legal costs of $5,198,000, BOB 27,322, and MXN 1,203,621, and (v) interest. (*Id.* ¶ 537(iii), (vi).)

With respect to the statute of limitations issue, the tribunal ruled that "the indemnity in Section 3.05 [of the SSPA] is properly characterized as an indemnity against liability" and that the liability was fixed at the time of the CIMSA-GCC damages arbitral award against GCC in 2015. (*Id.* ¶¶ 289, 298.) The tribunal determined, however, that it "cannot accept that CONCESUR, having accepted that set-aside proceedings should be commenced against the CIMSA Merits Award in Bolivia, can now argue that a claim for the indemnification of damages assessed following that award is time-barred." (*Id.* ¶ 299.) The tribunal reasoned that, because GCC's effort (with CONCESUR's initial acquiescence) to extinguish the CIMSA-GCC arbitration awards in Bolivia was successful, any claim against GCC was extinguished until the liability was fixed again as a result of the Colardo federal court's confirmation of the arbitration award in 2019. (*Id.*) The tribunal also determined in the alternative that, "even if [GCC's] claim relating to the CIMSA Damages Award did fall outside the statute of limitations, the Tribunal considers that considerations of equity would militate in favour of the Tribunal exercising its discretion under CPLR 7502(b) to disapply the time bar" because it was reasonable for GCC not to make a claim against CONCESUR while there was a chance of invalidating the CIMSA-GCC arbitration damages award in the Bolivian courts. (*Id.* ¶¶ 300–02.)

### D. These Petitions

As noted above, CONCESUR filed this petition to vacate the arbitration award against it on January 26, 2026, on the bases that (i) the arbitrators manifestly disregarded the law in finding that GCC's claim was not untimely, (ii) the arbitrators denied CONCESUR a fundamentally fair hearing by finding GCC's claim timely on a legal theory that CONCESUR did not have an opportunity to address, and (iii) the arbitrators' alternative finding that they would apply their discretion pursuant to N.Y. C.P.L.R. § 7302(b) to permit GCC's claim was in manifest disregard of the law. (Dkt. No. 1.) GCC opposed CONCESUR's petition to vacate and cross-petitioned to confirm the arbitration award. (Dkt. No. 25.)

## II. Applicable Legal Standards

The Federal Arbitration Act ("FAA") provides that "[w]ithin three years after [a nondomestic arbitration award] is made, any party to the arbitration may apply to any court having jurisdiction . . . for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. The "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 67 (2d Cir. 2023)

(quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). "The showing required to avoid summary confirmation of an arbitration award is high." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).

The FAA also provides that, within three months after the award is filed or delivered, a party may make a motion to vacate the award. 9 U.S.C. § 12. "[A] party moving to vacate the award has the burden of proof." *Willemijn*, 103 F.3d at 12. "Section 10 of the FAA allows a court to vacate an arbitration award in four circumstances, primarily involving fraud, corruption, partiality, misconduct, or imperfect execution or exceeding of arbitral powers." *Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021).

The U.S. Court of Appeals for the Second Circuit has also "held that 'as judicial gloss on the[] specific grounds for vacatur of arbitration awards' in the FAA, an arbitrator's 'manifest disregard' of the law or of the terms of the arbitration agreement 'remains a valid ground for vacating arbitration awards.'" *Id.* (alteration in original) (quoting *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451–52 (2d Cir. 2011)). However, a "litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *T.Co Metals LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (cleaned up). "It is not enough [to warrant vacatur] for petitioners to show that the panel committed an error—or even a serious error," *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010), and "[a] court will uphold an arbitral award if the arbitrator offers even a 'barely colorable justification' for the outcome reached," *Caremark, L.L.C. v. N.Y. Cancer & Blood Specialists*, 740 F. Supp. 3d 340, 352 (S.D.N.Y. 2024) (quoting *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009)). "To succeed in challenging an award under the manifest disregard standard, a party must make 'a showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.'" *Seneca Nation*, 988 F.3d at 626 (quoting *Schwartz*, 665 F.3d at 452). "In addition to this 'subjective component,' a finding of manifest disregard requires an objective determination that the disregarded legal principle was 'well defined, explicit, and clearly applicable.'" *Id.* (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 209 (2d Cir. 2002)).

## III. Analysis

CONCESUR has failed to demonstrate that the arbitration award should be vacated. The arbitrators' alternative determination that they had discretion under N.Y. C.P.L.R. § 7502 not to apply the six-year statute of limitations is certainly more than a "barely colorable justification for the outcome reached," *ReliaStar Life Ins.*, 564 F.3d at 86 (citation omitted), and therefore the arbitration award cannot be vacated.

CONCESUR lodges three core complaints about the arbitrators' exercise of discretion under N.Y. C.P.L.R. § 7502(b) not to apply the statute of limitations to bar GCC's claim. First, CONCESUR contends that N.Y. C.P.L.R. § 7502(b) does not provide the arbitrators with unlimited discretion to ignore the limitations period and that an arbitral tribunal's statute-of-limitations analysis should be substantively identical to a court's. (*See* Dkt. No. 19 (COMCESUR Mem.) at 23–25.) Second, CONCESUR suggests that discretion under N.Y. C.P.L.R. § 7502(b) could never permit the arbitrators to allow a claim that is otherwise untimely under New York's statute of limitations because such an exercise of discretion would itself constitute manifest disregard of the law. (*Id.* at 25–26.) And third, CONCESUR posits that N.Y. C.P.L.R. § 7502(b) does not apply because it is a procedural rule that is displaced by the FAA and the parties' contract did not expressly incorporate N.Y. C.P.L.R. § 7502(b). (*Id.* at 26–28.)

None of these complaints demonstrates that the arbitration award should be vacated on the basis that the arbitrators manifestly disregarded the law when they exercised discretion they believed they possessed under New York law to permit GCC's claim. CONCESUR argues, in essence, that the arbitrators committed legal error in determining that they had discretion with respect to the statute of limitations. Significantly, CONCESUR never raised this argument to the arbitrators—who, for the purposes of manifest disregard analysis, are "ordinarily assumed to be a blank slate unless educated in the law by the parties," *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (quoting *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002))—during the arbitration itself. (*See* Dkt. No. 1-8 (CONCESUR's Statement of Defense and Counterclaim) ¶¶ 304–05 (arguing against arbitrators exercising their discretion not to apply statute of limitations but failing to argue that the arbitrators did not possess such discretion); Dkt. No. 1-10 (CONCESUR's Statement of Rejoinder and Reply to Counterclaim) ¶ 344 (similar).) Unsurprisingly, the arbitrators concluded that they possessed discretion not to apply the statute of limitations bar even if GCC's claims would otherwise be untimely, noting that "both Parties have acknowledged that the Tribunal has this discretion." (Award ¶ 301.) "A party cannot raise in a motion to vacate an arbitral award or in opposition to a motion to confirm an argument it could have made but failed to make in the arbitration itself." *Eletson Holdings, Inc. v. Levona*

*Holdings Ltd.*, No. 23-cv-7331, 2024 WL 246367, at *1 (S.D.N.Y. Jan. 23, 2024). CONCESUR's newfound conviction that the arbitrators lacked discretion pursuant to N.Y. C.P.L.R. § 7502(b) not to apply the statute of limitations can therefore be rejected on this basis alone.

Moreover, even if CONCESUR were correct in its legal analysis and this Court were "convinced that the arbitration panel made the wrong call on the law," the award should nevertheless be enforced "if there is a *barely colorable justification* for the outcome reached." *Wallace*, 378 F.3d at 190 (quoting *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 260 (2d Cir. 2003)); *see Willemijn*, 103 F.3d at 13. CONCESUR does not demonstrate that "the arbitrators knew of the relevant legal principle" that CONCESUR asserts exists and should control here—that the arbitrators lacked discretion to permit an untimely claim pursuant to N.Y. C.P.L.R. § 7502(b)—or that the arbitrators "appreciated that" their lack of discretion "controlled the outcome" and "nonetheless willfully flouted the governing law by" applying discretion to permit an assumedly untimely claim anyway. *Seneca Nation*, 988 F.3d at 626 (quoting *Schwartz*, 665 F.3d at 452).

Regardless of the ultimate merit of CONCESUR's legal analysis of the meaning of N.Y. C.P.L.R. § 7502(b), the plain text of the statute certainly supports a more than "barely colorable" reading that the arbitrators "may, in their sole discretion, apply or not apply the bar" imposed by the statute of limitations. The arbitrators also certainly offered a more than "barely colorable justification" for their exercise of the discretion they believed they possessed: "considerations of equity . . . militate in favour of the Tribunal exercising its discretion under CPLR § 7502(b) to disapply the time bar" because "it was reasonable and efficient for [GCC] not to make a claim against [CONCESUR] as long as . . . the prospect of the CIMSA Damages Award being set aside [in the Bolivian courts] remained a live one" and because any claim by GCC against CONCESUR prior to the confirmation of the CIMSA-GCC arbitration in the Colorado federal district court "carried the risk of being wasteful (because no payment by [CONCESUR] might ultimately be required)." (Award ¶ 300, 302.) Accordingly, CONCESUR has not demonstrated that the arbitrators manifestly disregarded the law when they exercised discretion to permit GCC's claim even if it were untimely.

Because the arbitrators' conclusion that they had discretion to permit GCC's claim even if it were otherwise untimely "provided the arbitrators with a justification for their decision that satisfies the 'barely colorable' standard, [the Court] need not consider" CONCESUR's two alternate bases for vacating the award. *Willemijn*, 103 F.3d at 13.

Finally, turning to GCC's request for attorneys' fees and costs, the Court finds that GCC is entitled to attorneys' fees and costs in connection with this proceeding. Section 4.11 of the SSPA states, "With respect to any arbitral award rendered pursuant to [the SSPA], the losing party shall promptly reimburse the prevailing party for any actual and documented out-of-pocket expenses, including, without limitation, actual and documented attorneys' fees and disbursements and the costs of enforcement associated with such arbitral awards." Both parties agree that this provision means that the loser in this proceeding must pay the winner's attorneys' fees and costs. (*See* Dkt. No. 24 (GCC Mem.) at 24; Dkt. No. 27 (CONCESUR Opp.) at 19.) Because the Court grants GCC's petition to confirm the award, GCC is the prevailing party and is entitled to fees pursuant to Section 4.11 of the SSPA. Accordingly, GCC is directed to file a detailed fee and cost application for the Court's consideration.

## IV. Conclusion

For the reasons set forth above, the Court denies CONCESUR's petition to vacate the arbitration award (Dkt. No. 1) and grants GCC's cross-petition to confirm the award (Dkt. No. 25).

Dated: New York, New York
July 28, 2026

SO ORDERED:

Sidney H. Stein, U.S.D.J.